UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEROME PREASTER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FULTON SAVINGS BANK,<br><br>Defendant. | Case No.   5:22-cv-342 (BKS/TWD)<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiff Jerome Preaster ("Plaintiff") brings this Class Action Complaint against Defendant Fulton Savings Bank ("FSB" or "Defendant"), and alleges as follows:

### INTRODUCTION

1.  This case concerns FSB's unlawful business practice of assessing $32 fees where another fee (not a transaction) overdraws the account.

2.  FSB's fee-on-fee practice breaches promises made in FSB's adhesion contract, comprised of the Account and Service Agreement (Exhibit A hereto) and the Overdraft Policy (Exhibit B hereto) and the Fee Schedule (Exhibit C hereto, and collectively, the "Contract").

3.  Plaintiff and other Defendant customers have been injured by Defendant's improper fee maximization practices. Plaintiff, individually and on behalf of the class of individuals preliminarily defined below, brings claims for Defendant's breach of contract and violations of New York General Business Law § 349, *et seq*.

### PARTIES

4.  Plaintiff is a citizen of Liverpool, NY, and has maintained a checking account at FSB at all times relevant hereto.

1

5. Defendant Fulton Savings Bank is a bank with more than $450 million in assets. Defendant maintains its headquarters and principal place of business in this District in Fulton, NY. Defendant is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the Class, in this District.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class (including Plaintiff) is a citizen of a State different from the Defendant. The number of members of the proposed Class in aggregate exceeds 100 accountholders. 28 U.S.C. § 1332(d)(5)(B).

7. This Court has personal jurisdiction over the Defendant because it resides in, regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District and in New York.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District—where FSB maintains its headquarters and where Plaintiff conducts banking business with FSB.

## BACKGROUND FACTS

9. Overdraft fees and insufficient funds fees ("NSF fees") are among the primary fee generators for banks. According to a banking industry market research company, Moebs Services, in 2018 alone, banks generated an estimated $34.5 billion from overdraft fees. *Overdraft Revenue Inches Up in 2018*, Moebs Services (Mar. 27, 2019), https://bit.ly/3cbHNKV.

10. Unfortunately, the customers who are assessed these fees are the most vulnerable customers. Younger, lower-income, and non-white account holders are among those who were

more likely to be assessed overdraft fees. *Overdrawn: Consumer Experiences with Overdraft*, Pew Charitable Trusts 8 (June 2014), https://bit.ly/3ksKD0I.

11. Because of this, industry leaders like Bank of America, Capital One, Wells Fargo, Alliant, and Ally have made plans to end the assessment of OD and NSF fees entirely. *See* Hugh Son, *Capital One to Drop Overdraft Fees for All Retail Banking Customers*, NBC News (Dec. 1, 2021), https://nbcnews.to/3DKSu2R; Paul R. La Monica, *Wells Fargo Ends Bounced Check Fees*, CNN (Jan. 12, 2022), https://bit.ly/3iTAN9k.

12. Upon information and belief, Defendant has made no such plans. Rather, through the imposition of these fees, Defendant has made substantial revenue to the tune of tens of millions of dollars, seeking to turn its customers' financial struggles into revenue.

### DEFENDANT CHARGES OD FEES ON FEES THAT ARE NOT "TRANSACTIONS"

**A. Overview of Claim**

13. Plaintiff brings this action challenging Defendant's practice of charging $32 overdraft fees and/or NSF Fees on a third-party merchant's attempt to collect its own fee on a transaction that has been previously rejected by Defendant and already assessed a $32 fee by Defendant.

14. If a bill is presented by a third-party merchant to the customer's bank and the customer's account does not have sufficient funds, the bank may reject the item and impose a fee on the customer's account. Defendant charges a $32 fee in these circumstances.

15. In addition, the third-party merchant may impose its own fee on the rejected payment. For example, here, the third-party merchant charged Plaintiff a $20 fee.

16. But Defendant goes a step further. When the third-party merchant requests payment of its fee, Defendant treats the merchant's fee as a new transaction subject to a new $32 fee from Defendant, resulting in total fees of nearly $100 on the same payments by a customer already

3

struggling to make ends meet.

17. This is despite the fact that Defendant's accountholders never actually perform a separate consumer-initiated withdrawal or transaction and instead are being charged fees by third-party merchants.

**B. The Contract**

18. The Contract states that "[a]n overdraft occurs when you do not have enough money in your account to cover a transaction." Ex. B (emphasis omitted).

19. No "overdraft occurs" in connection with a merchant's attempt to collect a fee on a previously-rejected transaction because the merchant's fee is not a "transaction" – just a third-party merchant's attempt to collect its own fee.

20. The Contract further states that, "[i]f we do not authorize and pay an overdraft, your transaction will be declined and we may assess NSF fees on your account in accordance with your account agreement and the fee schedule in effect at the time of the overdraft." *Id*.

21. The Account Agreement states:

> Discretionary overdraft privilege and associated non-sufficient funds fees apply to overdrafts created by check, in-person withdrawals, and electronic (ACH) withdrawals.

Ex. A at 16.

22. The fee schedule states:

| | |
|---|---|
| Returned (unpaid) Insufficient Funds – (Checks, ACH, EFT, ATM withdrawals) | $32.00 per item |
| Overdraft (paid) Insufficient Funds – (Checks, ACH, EFT, ATM withdrawals) | $32.00 per item |
| Uncollected Funds (unpaid) – (Checks, ACH, EFT, ATM withdrawals) | $32.00 per item |
| Uncollected Funds (paid) – (Checks, ACH, EFT, ATM withdrawals) | $32.00 per item |

Ex. C.

23. Taken together, the Contract promises that $32 fees are only assessed on consumer-initiated "withdrawals" or "transactions," not on a third party's fee on a transaction that had been previously rejected and assessed a $32 fee by Defendant.

24. Defendant breaches its contractual promises when it charged fees in these circumstances.

### C. Plaintiff's Experience

25. As an example, on or around August 26, 2021, Plaintiff attempted a payment to BARRETTNYCJAMESV for $614.92.

26. Defendant rejected payment of that item for insufficient funds and charged Plaintiff a $32 fee for doing so.

27. On or around August 27, 2021, Defendant processed an attempt by BARRETTNYCJAMESV to assess a $20 RETURN FEE against Plaintiff's account. This $20 fee was not a transaction initiated by Plaintiff. Rather, it was a return fee initiated by the merchant.

28. Defendant rejected payment of the merchant's fee due to insufficient funds and charged Plaintiff *another* $32 fee for doing so.

29. On or around August 31, 2021, Defendant reprocessed the same $20 RETURN FEE attempt from BARRETTNYCJAMESV and paid it.

30. *In sum, Defendant charged Plaintiff $64 in fees (on top of the $20 fee assessed by BARRETTNYCJAMESV).*

31. Plaintiff understood that he would be subject to, at most, a single $32 fee from Defendant if a transaction overdrew his account and, at most, a single $20 fee from the merchant, BARRETTNYCJAMESV, if the transaction was rejected by Defendant and returned unpaid.

32. Instead, Plaintiff was charged *two* $32 fees by Defendant, including a $32 fee on the merchant's $20 fee.

33. The improper fee charged by Defendant was not an error, but rather an intentional charge made by Defendant as part of its standard processing of items.

34. Plaintiff therefore had no duty to report the fee as an error.

35. Moreover, any such reporting would have been futile as Defendant had made a decision to charge fees in this specific manner to maximize profits at the expense of customers.

## CLASS ALLEGATIONS

36. Plaintiff brings this action individually and as a class action on behalf of the following proposed Class:

> All consumers who, during the applicable statute of limitations, were Fulton Savings Bank checking account holders and were assessed an overdraft fee or an insufficient funds fee on a third party merchant's attempt to collect its own fee.

37. Plaintiff reserves the right to modify or amend the definition of the Class as this litigation proceeds.

38. Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

39. The time period for the Class is the number of years immediately preceding the date on which this Complaint was filed as allowed by the applicable statute of limitations, going forward into the future until such time as Defendant remedies the conduct complained of herein.

40. The members of the Class are so numerous that joinder is impractical. The Class consist of thousands of members, the identities of whom are within the exclusive knowledge of Defendant and can be readily ascertained only by resort to Defendant's records.

41. The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all members of the Class, was charged improper fees as set forth herein. The representative Plaintiff, like all members of the Class, has been damaged by Defendant's misconduct. Furthermore, the factual basis of Defendant's misconduct is common to all members of the Class and represents a common thread of unlawful and unauthorized conduct resulting in injury to all members of the Class. Plaintiff has suffered the harm alleged and have no interests antagonistic to the interests of any other members of the Class.

42. There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual members of the Class.

43. Among the questions of law and fact common to the Class include:

   a. Whether Defendant charged $32 fees on third-party merchant's fee requests;
   b. Whether this fee practice breached the Contract;
   c. Whether Defendant violated New York General Business Law § 349;
   d. The proper method or methods by which to measure damages; and
   e. The declaratory and injunctive relief to which the Class are entitled.

44. Plaintiff is committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions, particularly on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

45. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual class member's claim is small relative to the complexity of the litigation, no class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Class will continue to suffer losses and Defendant's misconduct will proceed without remedy.

46. Even if class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows for the consideration of claims which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

47. Plaintiff suffers a substantial risk of repeated injury in the future. Plaintiff, like all Class members, is at risk of additional improper fees. Plaintiff and the Class members are entitled to injunctive and declaratory relief as a result of the conduct complained of herein. Money damages alone could not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendant from continuing to commit its unfair and illegal actions.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract**
*(On Behalf of Plaintiff and the Class)*

48. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

49. Plaintiff and Defendant have contracted for banking services, as embodied in Defendant's account documents. *See* Exs. A-C.

50. All contracts entered by Plaintiff and the Class are identical or substantively identical because Defendant's form contracts were used uniformly.

51. Defendant has breached the express terms of its own agreements as described herein.

52. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the agreements.

53. Plaintiff and members of the Class have sustained damages as a result of Defendant's breaches of the Contract.

### SECOND CLAIM FOR RELIEF
### Violations of New York General Business Law § 349, *et seq.*
### *(On behalf of Plaintiff and the Class)*

54. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

55. FSB's practice of charging fees where another fee (not a transaction) overdraws the account violates NYGBL § 349.

56. NYGBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the New York State.

57. FSB conducts business, trade or commerce in New York State.

58. In the conduct of its business, trade, and commerce, and in furnishing services in New York State, FSB's actions were directed at consumers.

59. In the conduct of its business, trade, and commerce, and in furnishing services in New York State, FSB engaged in deceptive, unfair, and unlawful trade, acts or practices, in violation of NYGBL § 349(a), including but not limited to the following:

   a. FSB misrepresented material facts pertaining to the sale and/or furnishing of banking services to Plaintiff and the Class by representing that it would charge fees on transactions initiated by Plaintiff; and

   b. FSB omitted, suppressed, and concealed the material fact that it would charge such fees.

60. FSB systematically engaged in these deceptive, misleading, and unlawful acts and practices, to the detriment of Plaintiff and members of the Class.

61. FSB willfully engaged in such acts and practices and knew that it violated NYGBL § 349 or showed reckless disregard for whether it violated NYGBL § 349.

62. As a direct and proximate result of FSB's deceptive banking practices, members of the Class suffered injury and/or damages, including the payment of deceptive fees, as described herein, and the loss of the benefit of their respective bargains with FSB.

63. The unfair and deceptive practices by FSB, as described herein, were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

64. Further, FSB's conduct was substantially injurious to Plaintiff and members of the putative Class in that they were forced to pay fees they were told they would not incur.

65. FSB's actions in engaging in the above-described unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Class.

66. Had Plaintiff and members of the Class known they could be charged the above-described deceptive fees, they would have attempted to avoid incurring such fees.

67. As a result of the FSB's violations of NYGBL § 349, Plaintiff and members of the

Class have paid and will continue to pay improper fees. Accordingly, Plaintiff and the Class have suffered and will continue to suffer actual damages.

68. Accordingly, Plaintiff and the members of the Class are entitled to relief under NYGBL § 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorneys' fees and costs.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff and members of the Class demand a jury trial on all claims so triable and judgment as follows:

a. Certification for this matter to proceed as a class action;

b. Designation of Plaintiff as the Class Representative and designation of the undersigned as Class Counsel;

c. Restitution of all improper fees paid to Defendant by Plaintiff and the Class because of the wrongs alleged herein in an amount to be determined at trial;

d. Actual damages in amount according to proof;

e. Pre- and post-judgment interest at the maximum rate permitted by applicable law;

f. Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

g. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff, by counsel, demands trial by jury.

Dated: April 11, 2022       Respectfully submitted,

/s/ *James J. Bilsborrow*
James J. Bilsborrow (Bar Roll 519903)
Weitz & Luxenberg, P.C.
700 Broadway

4878-3107-1770, v. 2

New York, New York 10003
Telephone: (21) 558-5500
jbilsborrow@weitzlux.com

Lynn A. Toops*
Cohen & Malad, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 4204
Tel: (317) 636-6481
ltoops@cohenandmalad.com

J. Gerard Stranch, IV*
Branstetter, Stranch & Jennings, PLLC
223 Rosa L. Parks Ave. Ste. 200
Tel: (615) 254-8801
gerards@bsjfirm.com

Christopher D. Jennings*
Johnson Firm
610 President Clinton Avenue, Suite 300
Little Rock, Arkansas 72201
Tel: (501) 372-1300
chris@yourattorney.com

*pro hac vice applications to be submitted*

*Counsel for Plaintiff and the Proposed Class*